# IN ARBITRATION PROCEEDINGS
## PURSUANT TO AGREEMENT BETWEEN THE PARTIES

| |
|---|
| In the Matter of a Controversy |
| between |
| UNITED FOOD AND COMMERCIAL WORKERS LOCAL 21, |
| and |
| CHI FRANCISCAN HEALTH, HARRISON MEDICAL CENTER. |
| RE:     All RN's -- Wages for Missed Rest Periods |

OPINION AND AWARD

of

LUELLA E. NELSON,
Arbitrator

February 15, 2017

This Arbitration arises pursuant to Agreement between UNITED FOOD AND COMMERCIAL WORKERS LOCAL 21 ("Union"), and CHI FRANCISCAN HEALTH, HARRISON MEDICAL CENTER ("Employer"), under which LUELLA E. NELSON was selected to serve as Arbitrator and under which my Award shall be final and binding upon the parties.

Hearing was held on November 7, 2016. The parties had the opportunity to examine and cross-examine witnesses, introduce relevant exhibits, and argue the issues in dispute. A certified shorthand reporter attended the hearing and subsequently prepared a verbatim transcript. Both parties filed post-hearing briefs on or about December 21, 2016. The parties consented to an extension of time for preparation of this Opinion and Award.

## APPEARANCES

On behalf of the Union:

Jim McGuinness, Esq.
Streepy Law, PLLC
5030 1st Avenue South, Suite 101
Seattle, WA 98134

On behalf of the Employer:

Timothy J. O'Connell, Esq.
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA  98101-3197

## ISSUES

The parties were unable to agree on a statement of the issue or issues to be decided.  The Employer would formulate the issues as follows:

1.    Is the grievance timely?

2.    Did the Employer violate the collective bargaining agreement when it began, in October 2013, paying for a missed rest break only if the missed rest break treated as if it were hours worked caused the employee to work more than 40 hours in a week?

3.    If so, what is the appropriate remedy?

The Union would formulate the issue as follows:

Is the Employer violating the Agreement by not applying the overtime rate to time worked beyond the normal full-time work day resulting from missed rest periods?

If so, what is the appropriate remedy?

The parties stipulated that I would formulate the issue or issues to be decided.  Having reviewed the record, the Agreement, and the parties' statements of the issues, I formulate the issues as follows:

1.    Is the grievance timely?

2.    If the grievance is timely, shall the grievance be sustained or denied; and, if sustained, what shall be the remedy?

## RELEVANT SECTIONS OF THE CURRENT (2014-2017) AGREEMENT

### ARTICLE 5 – EMPLOYMENT PRACTICES

...
5.10    Benefit Accrual. Paid time off shall be regarded as time worked for purposes of the accrual of benefits.
...

### ARTICLE 7 – HOURS OF WORK AND OVERTIME

7.1    Work Day. The normal work day shall consist of eight (8) hours' work to be completed within eight and one-half (8-1/2) consecutive hours.
...
7.2    Work Period. The normal work period shall consist of forty (40) hours of work within a seven (7) day period or eighty (80) hours of work within a fourteen (14) day period. For purposes of this Agreement, the seven (7) day period shall begin at midnight Saturday and continue until midnight the following Saturday night.
...
7.4    Pyramiding.  There shall be no pyramiding or duplication of overtime pay and/or other premium compensation paid at the rate of one and one-half (1-1/2) the regular rate which would result in compensation exceeding one and one-half (1-1/2) for the same hours worked (Addendum F).

7.5    Overtime Approval. The Employer and the Union agree that overtime shall be discouraged. The Employer shall not require its nurses to work beyond their scheduled shift or work periods nor will it implement mandatory call, if doing so would violate RCW 49.28.130-150. If overtime work is necessary, volunteers will be sought before reasonable overtime

2

may be assigned on a rotational basis. Overtime shall be considered in effect if eight (8) minutes or more are worked after the end of the scheduled shift. Thereafter, overtime will be paid to the nearest fifteen (15) minutes. Utilization of unauthorized overtime may be grounds for disciplinary action.[1]

    7.5.1    Overtime shall be compensated for at the rate of one and one-half (1-1/2) times the regular rate of pay for time worked beyond the normal full-time work day or normal full-time work period. Time paid for but not worked shall not count as time worked for purposes of computing overtime pay.[2] If a nurse works more than twelve (12) consecutive hours within a twenty-four (24) hour period, all work performed in excess of twelve (12) consecutive hours shall be paid at the double time (2x) rate of pay. Excluding emergency situations, the Employer as a matter of policy shall not reschedule a nurse for extra work because of time off with pay. However, if a nurse works an additional shift during the same week as time off with pay; and the employer has a need; the time off will be credited back to the appropriate accrual banks. This will not apply in instances of time off for unscheduled occurrences.[3]

7.6    <u>Meal/Rest Periods</u>. All nurses shall receive an unpaid meal period of one-half (1/2) hour. Nurses required to remain on duty or to return to their nursing unit to perform nursing duties during their meal period shall be compensated for such time at the appropriate rate of pay. All nurses shall be allowed two (2) paid rest periods of fifteen (15) minutes each during each shift of eight (8) hours or more in duration. Meal periods and rest periods shall be administered in accordance with State Law (WAC 296-126-092). The Employer and Union agree that the rest period should be uninterrupted, unless otherwise requested by the nurse or a clinical emergency, as determined by the Employer or designee, requires the nurse to return to the unit.[4]

...

### ARTICLE 10 – PAID TIME OFF PROGRAM[5]

10.    <u>Paid Time Off Program-PTO & EIB</u>. All full-time and part-time employees are eligible for paid time off ("PTO") and Extended Illness Bank ("EIB") pursuant to this article, and the provisions of the Employer's policy, "Paid Time Off Program (PTO and EIB)".

...

10.7    <u>Pay Rate</u>. PTO and EIB pay shall be paid at the nurse's regular rate of pay, and may be used in one (1) hour blocks. Neither PTO nor EIB hours count as hours worked in determining eligibility for overtime.

...

---

[1]     The prior two Agreements numbered this provision Article 7.4. The bulk of the equivalent language in each Agreement was the same. However, the final sentence of the current provision was not included, and the following language appeared at the end of the equivalent provision in those Agreements:

        There shall be no pyramiding or duplication of overtime pay and/or other premium compensation paid at the rate of one and one-half (1 1/2) the regular rate which would result in compensation exceeding one and one-half (1 1/2) for the same hours worked (Addendum E).

[2]     The parties stipulated that this sentence has been in the Agreement since the 1970's.

[3]     The last two sentences of this provision did not appear in the equivalent provisions (numbered Article 7.4.1) of the prior two Agreements; the language was otherwise the same.

[4]     The last sentence of this provision first appeared in the 2011-2014 Agreement in what was then numbered Article 7.5.

[5]     Article 10 appeared for the first time in the 2011-2014 Agreement.

## ARTICLE 15 – GRIEVANCE PROCEDURE

15.1     <u>Grievance Defined</u>.  A grievance is defined as an alleged violation of the terms and conditions of the Agreement. If any such grievance arises, it shall be submitted to the following procedure.  In order to be subject to the following procedure, a grievance shall be submitted at the first applicable step within thirty (30) calendar days from when a nurse, nurses or the Union is aware or should have been aware that a grievance exists.

...

Step 5.   <u>Arbitration</u>
If the grievance is not settled on the basis of the foregoing procedures, the Union may submit the issue in writing for arbitration .... The arbitrator's decision shall be final and binding on all parties.  The arbitrator shall have no authority to add to, subtract from, or otherwise change or modify the provisions of this Agreement as they may apply to the specific facts of the issue in dispute.  Each party shall bear one-half (1/2) of the fee of the arbitrator and any other expenses incurred incident to the arbitration hearing.
...

Any arbitrator accepting an assignment under this Article shall issue an award within thirty (30) calendar days of the close of the hearing or the receipt of post-hearing briefs, whichever is later.

...

## ARTICLE 16 – GENERAL PROVISIONS

...

16.3     <u>Past Practices</u>. Unless specifically provided herein to the contrary, past practices shall not be binding on the Employer. The Employer agrees that it will not make any changes in past practices that would have the effect of discriminating solely against members of the bargaining unit. The Employer will communicate any changes in past practices to the nursing staff in advance of the change.

16.4     <u>Complete Understanding</u>.  The parties acknowledge that during the negotiations which resulted in this Agreement all had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.  Therefore, the parties hereto, for the life of this agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of any or all of the parties at the time they negotiated or signed this Agreement.  The parties further agree, however, that this Agreement may be amended by the mutual consent of the parties in writing at any time during its term.

16.5     <u>Management Responsibilities</u>.  The management of the Medical Center and the direction of the work force are vested exclusively with the Employer, subject to the terms of this Agreement.  All matters not specifically and expressly covered by the language of this Agreement may be administered for its duration by the Employer in accordance with such policies and procedures as it from time to time may determine.

ADDENDUM A

TWELVE (12) HOUR WORK SCHEDULE

...

2.     <u>Hours of Work and Overtime</u>

a.     The normal work day shall consist of twelve (12) hours' work to be completed within twelve and one-half (12-1/2) consecutive hours.

b.     The normal work period will consist of forty (40) hours within a seven (7) day work period.

c.     Overtime shall be compensated at a rate of one and one-half (1-1/2) times the regular rate of pay for all time worked beyond or prior to the normal work day [twelve (12) hours] or beyond or prior to the normal work period [forty (40) hours within a seven (7) day period].

> d.   Employees shall receive an unpaid meal period of thirty (30) minutes and shall be allowed three (3) paid fifteen (15) minute breaks during each twelve (12) hour shift.

...

## ADDENDUM B

### TEN (10) HOUR WORK SCHEDULE

...

2.   <u>Work Day</u>.  The normal work day shall consist often [sic] (10) hours of work plus one (1) unpaid meal of thirty (30) minutes and two (2) paid breaks of fifteen (15) minutes each.

3.   <u>Overtime</u>.  Ten (10) hour nurses receive overtime compensation for all hours actually worked in excess often [sic] (10) hours in one (1) day and/or in excess of forty (40) hours in a seven (7) day period.  Overtime shall be paid at time and one-half (1-1/2x) the normal straight-time rate of pay.

...

## ADDENDUM C

### SIXTEEN (16) HOUR WORK SCHEDULE

...

3.   <u>Overtime</u>.  Sixteen (16) hour nurses shall receive overtime for all hours actually worked in excess of sixteen (16) hours in one (1) day and/or in excess of forty (40) hours in a seven (7) day period.  Overtime shall be paid at time and one-half (1-1/2x) the normal straight time rate of pay.

...

5.   <u>Work Day</u>.  Sixteen (16) hours per day will be the normal work day, exclusive of the meal periods.  Two (2) unpaid thirty (30) minute meal periods shall be provided and four (4) fifteen (15) minute paid breaks shall be provided.

...

# RELEVANT LEGAL PROVISIONS

RCW 49.46.130

Minimum rate of compensation for employment in excess of forty hour workweek—Exceptions.

(1) Except as otherwise provided in this section, no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed.
...

WAC 296-126-002

Definitions
...

(8)   "Hours worked" shall be considered to mean all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place.

WAC 296-126-092

Meal periods—Rest periods.

(1)   Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.

5

(2)      No employee shall be required to work more than five consecutive hours without a meal period.

(3)      Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.

(4)      Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.

(5)      Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

## FACTS

The Employer operates a hospital in Bremerton, Washington. Since August 2013, it has been affiliated with the Franciscan Health System, which operates several hospitals.  The Union represents the Employer's registered nurses as the successor to United Staff Nurses Union, Local 141.

This case involves the rate of pay for missed rest breaks.  Nurses who work 8-hour shifts are contractually entitled to two paid 15-minute rest breaks and one 30-minute unpaid lunch break.  Nurses who work 12-hour shifts are entitled to three paid 15-minute rest breaks and one 30-minute unpaid lunch break.  Nurses who work past the end of a shift are paid at overtime rates for the extra work time.

Starting at an unknown date before August 2013, the Employer has paid for missed breaks at straight time.  As discussed below, since October 1, 2013, the Employer has counted missed breaks as "time worked" in computing overtime required by statute, i.e., hours exceeding 40 hours per week, and has paid for missed breaks at overtime rates if the weekly "time worked" exceeds 40 hours.  The Union asserts that the Agreement requires missed breaks to be counted as "time worked" in computing and paying daily overtime, as well.  The Employer disputes the timeliness of this grievance, and also disputes it on the merits.

## THE GRIEVANCE AND RESPONSES

On April 14, 2015,[6] the Union filed a grievance alleging that the Employer had violated contractual provisions "Including, but not limited to, Article 7 Hours of Work and Overtime" in the following regards:

In the past 30 days, Harrison Medical Center has paid straight time for nurses who miss a contractually provided 15 minute rest period.  Time should be paid at one and on-half [sic].

---

[6]      Except as otherwise indicated, all dates refer to 2015.

On April 22, the Employer denied the grievance on the following grounds:

> The Employer's practice is that if an RN misses a rest break, the RN is paid for an additional 15 minutes of time that is added on to the end of the shift. Additionally, if the employee exceeds 40 hours in one work week, they are paid overtime for the missed rest break. This time is not counted as actual time worked, and therefore, daily overtime is not paid. The relevant contract language is contained in Section 7.5.1, which states: "Time paid for but not worked shall not count as time worked for purposes of computing overtime pay." (Overtime compensation is paid for over 40 hours, even if it is unworked break time, to be compliant with applicable law.) In addition to the practice being based on the contract language, this has been the Employer's past practice for an extended period of time, such that the Union and nurses either knew or reasonably should have known of the practice. The grievance is therefore untimely under Section 15.1. The Union also had the opportunity to bargain over this past practice and has not done so, such that there is a bargaining waiver under Section 16.4. Further, because the practice is not in violation of the CBA, the means of computing break compensation can be determined by the Employer under the Management Responsibilities clause of the CBA, Section 16.4 [sic].

The Employer also addressed at length an information request that accompanied the grievance.

> On April 23, the Union replied, in pertinent part, as follows:

> The union disagrees with Harrison Medical Center's position of the grievance being filed untimely. This is an ongoing issue and the union has not waived its right to file future grievances regarding meal and rest periods. The union also does not have access to the medical center's payroll system and therefore cannot be expected to have full knowledge of payroll practices at any given time. These practices have changed over the course of my assignment as representative of the Registered Nurses.
> ...
> In closing, I do not understand your argument of compliance and the denial of the grievance after offering several solutions to fulfill the information request. This is highly unusual and I believe the medical center is obligated to process the grievance.

On June 24, after a Step 1 grievance meeting, the Employer denied the grievance on the following grounds:

> During the meeting you explained the Union's position that Harrison Medical Center should be paying overtime at time and one-half (1½) for nurses who miss a 15 minute rest period, and that Harrison is ignoring the language in Section 7.5 Overtime Approval which states, "Overtime shall be considered in effect if eight (8) minutes or more are worked after the end of the scheduled shift." Furthermore, you stated that the time worked language in section 7.5.1 does not apply to missed rest breaks and only applies to PTO and other time not worked.

> We respectfully disagree with your position. We disagree with your assertion that if a staff member works a 12 hour shift and misses a 15 minute rest period, they have now worked 12 hours and 15 minutes. Harrison maintains that the 15 minutes paid at the end of a shift for a missed rest break is not counted as actual time worked, and therefore section 7.5.1 in the contract, which states "Time paid for but not worked shall not count as time worked for purposes of computing overtime pay" applies.

7

As discussed in the meeting, if an RN misses a 15 minute rest break, the time is added on to the end of the shift and the employee is paid straight time for that period, and if the employee works over 40 hours in one week, they are then paid statutory overtime. This is consistent with WAC 296-126-092 and the State Supreme Court's decision in WSNA vs. Sacred Heart. In Section 7.6 Meal/Rest Periods, the contract states, "Meal periods and rest periods shall be administered in accordance with State Law (WAC 296-126-092)."

Additionally, as Harrison has informed UFCW, the manner in which Harrison computes pay for missed breaks is consistent with its past practice (and, to our knowledge, with industry practice). We have also had meetings addressing Harrison's overtime pay practices and the union has never before raised an issue regarding the practice of paying only weekly overtime, when applicable, for missed rest breaks. There is no doubt that not only were your members in general compensated pursuant to this practice, but so too were shop stewards (representatives) and members of the bargaining committee when this issue was never raised in negotiations. Also, please note that the grievance procedure dictates that the grievance must be brought within thirty days of when the nurse, nurses, or union is aware or should have been aware that a grievance exists. Your members have had access to their pay stubs and their time cards and certainly should have been aware of the facts underlying the grievance. Therefore, the grievance is also untimely.

In conclusion, Harrison Medical Center maintains that their pay practice for computing compensation for missed rest breaks is in compliance with the collective bargaining agreement, state law, and past practice. It also maintains that the grievance is untimely.

The Union moved the grievance through subsequent steps. The Employer's Step 3 response further articulated its denial of the grievance in the following regards:

... As we stated in the meeting, we respectfully disagree with your interpretation and feel that no violation of a contract term occurred. Our denial of this grievance is based on the following considerations: The UFCW RN contract language is very clear and unambiguous. Specifically:

- Article 7.6 states that "Meal periods and rest periods shall be administered in accordance with State Law (WAC 296-126-092)." With the Sacred Heart Decision, the Supreme Court decided that under RCW 49.46.130 overtime is triggered only when an employee works more than 40 hours in a week, not for an instance that an employee works less than 40 hours in a workweek.

- Article 7.5.1 states that "Overtime shall be compensated for at the rate of one and one-half (1-1/2) times the regular rate of pay for time worked beyond the normal full-time work day or normal full-time work period. Time paid for but not worked shall not count as time worked for purposes of computing overtime pay." An employee does not work beyond the normal workday by missing a break and clearly a missed rest break is "time paid for but not worked."

Additionally, our past practice and bargaining history support our position. Our most recent negotiations with the UFCW RN unit was settled last fall in 2014. There was no discussion concerning these assertions at that time.

Prior to that in July of 2013, Michael Hines, and an attorney representing UFCW met with Marie LaMarche, and Ed Taylor, attorney representing Harrison Medical Center, to discuss

the Sacred Heart decision and the application of pay for missed rest breaks. The union's assertion at that time was that a missed rest break should be paid at an overtime rate if the added hours pushed the nurse's workweek over 40 hours a week. At no time did the union indicate they felt overtime was due when the missed rest break caused the nurse to be paid more hours than the regular shift. These discussions also occurred during active bargaining with the UFCW Professional-Technical unit.

No discussions occurred during the eleven months of bargaining with the Professional Technical unit, concerning the payment of missed rest breaks. In July of 2014 bargaining ensued with the UFCW Dietary and Service unit and no discussions concerning pay for missed rest breaks occurred. During all of these negotiations the union failed to challenge the current practice or the language.

## PAYMENT FOR MISSED BREAKS – THE KRONOS SYSTEM

The Employer uses the KRONOS timekeeping system. KRONOS automatically subtracts 30 minutes from an employee's total time on the premises to account for the unpaid lunch break. Upon clocking out for the day, employees attest to whether they actually received their lunch break; if not, the employee is paid for those 30 minutes. If an employee works through a paid 15-minute rest break, s/he notes that in a handwritten KRONOS exception log, which results in a manual override to pay for those 15 minutes. Missed breaks are paid at straight time unless adding that time results in a total of more than 40 work hours in the week; in that case, the time after 40 hours is paid at overtime rates.

## APPLICABLE COURT DECISIONS

In Wingert v. Yellow Freight Systems, Inc., 146 Wn.2d 841, 50 P.3d 256 (2002), the employer allowed a paid 10-minute rest break during an overtime shift of more than two hours after a regular shift, but none in an overtime shift of less than two hours. WAC 296-126-092(4) prohibits employers from requiring employees to work more than three hours without a rest period. Employees brought suit arguing that they were entitled to a 10-minute paid rest break during the first two hours of overtime shifts that followed a regular shift. The Supreme Court of Washington rejected the employer's arguments that the employees had been paid for all the time they worked, so there were no lost wages. It found that

Employees who must work through their overtime break are, in effect, providing Yellow Freight with an additional 10 minutes of labor during the first two hours of their overtime assignments. When the employees are not provided with the mandated rest period, their workday is extended by 10 minutes. ... [E]mployees are entitled to be compensated by Yellow Freight for 2 hours and 10 minutes of work. ...."

9

(146 Wn2d. 841 at 849)  It also found that the collective bargaining agreement, which called for a 15-minute break after two hours of overtime, could not abrogate the right to rest periods, but could enhance or exceed the minimum standards.  (Id. at 152) Because the case involved employees who were working overtime shifts, whether to pay the missed breaks at overtime or straight time rates was not an issue.

In Wash. State Nurses Assn. v. Sacred Heart Med. Center, 175 Wn2d. 822, 287 P.3d 516 (2012), nurses were scheduled for 8-hour shifts with two paid 15-minute rest breaks.  The employer often required nurses to work through their rest breaks, and paid for the missed rest breaks at straight time.  The nurses' union sought statutory overtime pay for 10 of the 15 minutes for each missed rest break; it disavowed reliance on the contract as a basis for its suit.  The Supreme Court of Washington rejected the employer's argument that overtime pay was not due "because nurses missing breaks worked harder but not longer for purposes of calculating 'hours worked.'"  (175 Wn2d. at 830) It concluded that having nurses work through breaks

> was the equivalent of labor Sacred Heart otherwise would have secured by requiring nurses to work overtime only at the end of their shifts.  By putting nurses in a situation where they could not take their breaks, in violation of WAC 296-126-092(4), Sacred Heart effectively "authorized or required" nurses "to be on duty on the employer's premises" to perform work equivalent to an overtime shift after the end of their normal workday.

(Id. at 831) It noted that "the Washington Department of Labor and Industries advises employers that when their employees miss breaks, employers must reduce employees' work time accordingly or pay overtime compensation."  (Id. at 832).  It held that,

> Because rest periods may not be offset by time spent working, nurses in this case were entitled to 0.25 "hours worked" for their breaks and an additional 0.25 "hours worked" for working through their breaks. [citation omitted] These additional hours extended the nurses workweek beyond 40 hours, thus triggering the overtime provisions of RCW 49.46.130(1)

(Id.) It held that "nurses are entitled to overtime compensation for the first 10 minutes of each break they missed." (Id.)  The Court found it unnecessary to interpret the collective bargaining agreement to resolve the legal issue raised in the case before it.  (Id. at 833)

A third case sheds further light on the Court's interpretation of WAC 296-126-092(4).  In Demetrio v. Sakuma Bros. Farms, Inc., 183 Wn2d. 649, 355 P.3d 258 (2015), the Court summarized the concern raised by Sacred Heart as follows:

> The employer in that case often required employees to work through rest breaks during their eight-hour shifts.  Although the employer would pay employees for missed rest breaks, it did not pay overtime, since the employees were never on the employer's premises for more than eight hours.  Citing WAC 296-126-092(4), the [Minimum Wage Act], and "considerations of employee health," we required the employer to compensate missed rest breaks at the overtime rate.  Id. at 832.  We reasoned that any other interpretation created an economic incentive for employers to encourage employees to skip breaks, a result contrary to the intent of WAC 296-126-092 and the MWA.  Id.

Sl. op. at 8-9.  The Court noted the impact of missed breaks on the law's fundamental purpose of protecting healthy working conditions.  It reiterated the earlier cases' rejection of attempts to parse hours worked "on the employer's time" between hours spent on rest breaks and hours spent actively working.  (Sl. op. at 13-14)  It held that pay for rest breaks must be separate from the piece rate, at least equal to the minimum wage or the pieceworkers' regular rate of pay, whichever is greater.

THE PARTIES' RESPONSE TO THE SACRED HEART DECISION

The Employer's accounting for missed rest breaks prior to 2013 is unclear on this record.  By August 2013, the Employer was paying employees who missed rest breaks for an additional 15 minutes at straight time rates.  It did not count those 15 minutes as "time worked" in determining whether employees were entitled to overtime, on either a daily or weekly basis.

Then-Director of Human Resources (now Division Director of Labor Relations) Marie LaMarche, the Employer's attorney, the Union's attorney, and Union Representative Mike Hines met on August 20, 2013, to discuss the impact of Sacred Heart.  No agreement resulted from this meeting.  Hines recalled that discussions about missed rest breaks continued between the parties' attorneys into the following year.  LaMarche testified that the Employer's attorney did not report having ongoing discussions.  The attorneys did not testify.

LaMarche testified that she is not sure whether nurses received additional compensation for missed breaks when she arrived in 2008, and that she "wasn't quite sure" at the time of the August 20, 2013, meeting how the Employer was paying for missed breaks.  She recalled that the Union asserted in that meeting that, in light of Sacred Heart, missed rest breaks should be paid at overtime if they pushed the employee into statutory overtime (i.e., over 40 hours' work in a week), and that there was no discussion of contractual daily overtime.  Hines testified the parties discussed the implications of Sacred Heart for both daily and statutory overtime.

11

On October 1, 2013, the Employer began counting missed breaks as time worked for purposes of computing statutory overtime, and paying overtime if the hours worked exceeded 40 in a week. It did not notify the Union or nurses of this change in pay practices. Hines testified that he learned from another Union representative in 2014 that the Employer was paying overtime for missed rest breaks, and that he thought it was paying daily overtime for missed rest breaks. He later learned from talking with Union steward Michael Nord that the Employer was not paying daily overtime for missed breaks.

At a Nurse Conference meeting held April 9, 2015, Hines asked how the Employer was paying for missed rest breaks. Minutes of that meeting report that the Employer replied that it paid time and one half for missed rest breaks only after 40 hours of "actual hours worked."

INDIVIDUAL EMPLOYEE EXPERIENCE WITH PAYMENT FOR MISSED BREAKS

Nord has worked for the Employer since March 2014. He works 12-hour shifts and often works hours that are paid at premium pay. For example, all 62.75 hours in the week of August 5-11, 2014, were premium hours; in some other weeks, more than half of his hours were premium hours. He first reported a missed break in the week of August 10-16, 2014, when he worked 51.5 hours, received premium pay for 27.5 hours, and missed .75 hours in breaks. In the next 37 weeks, he missed one or more breaks in 33 weeks, and worked premium hours in all but one of those weeks; in that one week, he worked 38.75 hours. He was paid at overtime rates for missed breaks in four weeks; the first was in the week of November 2-8, 2014, when he worked 53 hours, received premium pay for 13.5 hours, and was paid at overtime rates for .5 hours of missed breaks. During the four weeks prior to the filing of this grievance, payroll records show the following hours of work, premium hours, missed rest breaks, and missed rest breaks paid at overtime rates for Nord:

| Work Week | Hours Worked | Premium Hours | Missed Rest Breaks | Missed Rest Breaks paid at Overtime |
|-----------|-------------|---------------|-------------------|-------------------------------------|
| 3/15-21/2015 | 39.75 | 2.50 | 1.25 | |
| 3/22-28/2015 | 40.75 | 16.75 | 1.50 | |
| 3/29-4/4/2015 | 48.50 | 11.00 | 2.50 | 2.50 |
| 4/5-11/2015 | 33.25 | 6.00 | 0.75 | |

Nord testified that he was unable to tell from his pay stubs whether he was paid daily overtime for missed breaks.  He first talked to a Union steward, who told him she thought he was paid overtime rates.  He talked to one timekeeper, then later to that timekeeper's successor, before learning that he was not receiving daily overtime for his missed breaks.  His pay stubs are not in evidence.

The Employer introduced summaries of payroll records for employees who missed breaks in six selected weeks between October 2013 and February 2015.  Employees who worked fewer than 40 hours in a week were never paid at overtime rates for missed breaks.  Employees who worked more than 40 hours in a week were not always paid at overtime rates for missed breaks.  Shara Summers, for example, worked 45.50 hours in the week of October 6-12, 2013, of which 21.5 hours were premium hours.  She missed .5 hours of rest breaks in that week, for which she was not paid at overtime rates.  In the week of October 12-20, 2014, she worked 48.5 hours, of which 8.75 were premium hours, and was paid at overtime rates for .25 hours of missed breaks.  Similarly, Misty Wilkins worked 41.25 hours in the week of October 6-12, 2013, of which 17.25 hours were premium hours, and missed an hour of rest breaks for which she was not paid at overtime rates.  She worked 49.75 hours in the week of October 12-18, 2014, of which 13 were premium hours, and missed .75 hours of rest breaks for which she was not paid at overtime rates.  The payroll summary does not address whether rest breaks were missed during hours when the employee was already working at premium rates.

## POSITION OF THE UNION

### TIMELINESS

The grievance is timely.  The Employer bears the burden of proving that it is untimely.  A general presumption favors arbitration over dismissal of grievances on technical grounds.  Doubts about contract language or a party's compliance with those requirements are resolved in favor of reaching the merits of the dispute.  Doubts are resolved against forfeiture of the right to grieve.

The Employer changed its practice without telling the Union or its nursing staff about the change or how the practice was going to be changed.  The Union filed a grievance within 30 days of the date it became

13

aware or should have become aware of the alleged violation.  Each time a nurse is not paid daily overtime for a missed rest break is a new violation of the Agreement under the continuing violation doctrine.

Hines filed the grievance promptly after learning the Employer paid straight time for Nord's missed rest periods.  The Employer offered no evidence to show that Hines knew or should have known of the alleged violation for more than 30 days before filing the grievance.  Nord did not clearly understand whether he received overtime pay, so he conferred with two different timekeepers before contacting Hines.  Hines mistakenly believed the Employer was paying daily overtime consistent with the Agreement, based on a conversation with another Union representative.  Had the Employer notified the Union or nurses about the October 2013 change to its practice, Hines would have known that daily overtime was not being paid.

The Employer did not notify the Union or nurses that it was changing its practice or how it would be changed.  It met with the Union in August 2013 to discuss the ramifications of Sacred Heart.  It made no commitments about changing its practice at the meeting.  Hines believed the parties' attorneys had protracted discussions over the issue after that meeting.  The Employer unilaterally changed its practice in October 2013, to start counting missed rest period time as hours worked when computing statutory overtime.  It gave no notice to the Union or nurses before or after implementing this change.  Article 16.3 required the Employer to provide advance notice of the change.  Having failed to comply with that provision, the Employer cannot claim it is too late for the Union to grieve when a member brings an actual violation to its attention.

Alternatively, the grievance is timely under the continuing violation doctrine.  Arbitrators are particularly apt to apply that doctrine where an employee is allegedly paid wrong.  Each payment in violation of the Agreement constitutes a new occurrence that may be grieved.  When the alleged continuing violation ceases, the grievance must be filed within the contractual time limit after the last occurrence.

Here, the exclusion of missed rest period time from the calculation of hours worked reoccurs every time an employee reports a missed rest period.  A new violation occurs each time the Employer pays straight time to nurses like Nord for missed rest periods.  These alleged violations occurred within the 30 days preceding the grievance, and continue to occur.  The grievance is clearly timely.

The unpublished arbitration decisions on which the Employer relies are distinguishable.  Three had strict language that did not tie the timeline to when the Union knew or should have known of a violation.  Two involved situations where employees and/or the Union had written notice of the alleged contract violation.  The grievance in one was filed more than two years after the grievant and union received letters from the employer explaining the salary increase at issue.  Here, the timeline for filing a grievance is triggered when the Union or employee knows or should know of the alleged contract violation.  Neither the Union nor employees were given notice of the alleged contract violation.  The Employer acted unilaterally without notice as required by the Agreement.  There was no evidence that the paystubs gave explicit notice of a change in practice.  The opposite inference is warranted given Nord's testimony that he consulted two timekeepers to help him understand how he was compensated for missed rest periods because he was not clear whether he was paid overtime.

THE MERITS

The Washington Supreme Court has ruled that both rest period time taken and rest period time missed constitute "hours worked" as a matter of law.  The Court did not leave room for parties to exclude missed rest periods from "hours worked" as a matter of contract.

The parties agree that external law is relevant to resolving this dispute.  The Agreement calls for rest and meal period provisions to be administered as provided by State Law.  Both parties have cited decisions of the Court.  The Arbitrator has clear authority to interpret the Agreement in light of applicable State Law.

State Law provides that time employees are on rest breaks and the additional labor they provide during missed rest periods is hours worked.  Wingert held that employees have a cause of action for additional wages when a rest period is missed.  It also characterized the missed break as additional labor that extends the employee's work day by the amount of break time missed.  Sacred Heart held that the additional hours of labor an employer receives when a rest period is missed must be treated as "hours worked" under WAC 296-126-002(8).  The threshold issue the Court resolved was whether missed rest breaks were hours worked.  The statutory overtime remedy was simply a consequence of that determination for nurses whose total hours worked (including missed rest periods) exceeded the 40-hour statutory maximum for straight-time compensation.

Sakuma Brothers Farm emphasized that rest period time is the equivalent of any other type of hours worked by employees as a matter of law.

The Court has never held that parties may contractually agree that rest period time (taken or missed) may be excluded from "hours worked." In Sacred Heart, the Court said no interpretation of the contract was required to resolve the lawsuit filed to vindicate statutory rights. While payment of daily overtime is not required under State Law, excluding missed rest period time from "hours worked" is contrary to State Law. At a minimum, excluding that time from "hours worked" is inconsistent with the agreement to administer rest periods in accordance with State Law.

When employees work their normal work days, any rest period time missed extends their work day by the amount of the missed rest period(s). Under Article 7.5.1, those employees are entitled to payment at overtime rates on the missed rest period time. The Employer should be required to count rest period time as hours worked in administering the daily overtime requirement in Article 7.5.1.

The Agreement does not purport to exclude rest period time from "hours worked." The pay for time not worked sentence in Article 7.5.1 was not intended to apply to rest period time. The fact that rest period time taken has never been considered pay for time not worked shows the parties intended to apply that language only to pay employees receive when they are off work.

Persuasive arbitral authority supports interpreting the Agreement to include missed rest period time as hours worked. Arbitrator Whalen found that Providence Saint Peter Hospital violated the rest and meal period provision, and ordered compensation at the "appropriate rate of pay," thus declining to follow an award by Arbitrator Levak for "straight-time" pay for missed rest periods at Sacred Heart. The same "appropriate rate" language is in Article 7.6 here.

Arbitrator Savage later took note of the distinction between the "appropriate rate of pay" ordered by Arbitrator Whalen and the straight-time rate of pay ordered by Arbitrator Levak. Arbitrator Savage pointed out that rest period time taken is considered hours worked and is part of the normal work day under the contract. She rejected the assertion that the "pay for time not worked" proviso in the overtime provision was

intended to apply to missed rest period time.  She reasoned that the contract made rest period time "hours worked" without regard to the fact that an employee is not working when on break.  She found no support for treating missed rest period time differently from rest period time taken.  She ordered overtime pay for missed meal and/or rest breaks if the nurse completed a scheduled shift of at least eight hours and otherwise met the contractual requirements.

Arbitrator Bonney denied a grievance insofar as it alleged the employer had committed a systemic violation of the contractual rest and meal period provisions, and rejected all the union's contentions except one. He found the employer had violated the contract by failing to pay contractual daily overtime on missed rest periods.  He found that missed rest breaks were "time worked" by stipulation and according to established law.

Pyramiding is not involved in this case because the Union has not asked the Employer to pay overtime twice on the same hours.  Nurses rarely receive statutory overtime for missed rest periods, and almost always would receive daily overtime for that time if it was considered hours worked.

Several contractual provisions show an intent to treat rest period time as hours worked.  Article 7.1 defines the normal work day as 8 hours of work to be completed within 8½ consecutive hours.  Article 7.2 defines the work week as 40 hours of work within a 7-day period or 80 hours within a 14-day period.  Article 7.6 grants employees two paid 15-minute rest breaks for each shift of 8 hours or more.  The Twelve Hour Addendum provides 3 paid rest periods to 12-hour shift nurses.  As in the case before Arbitrator Savage, the parties structured the work day and work week to include paid rest period time as hours worked, even though the employee is relieved of duties during rest periods.  The Employer records rest period time taken as hours worked for all purposes.

The Employer's interpretation of the Agreement penalizes employees who are deprived of rest breaks. The rest time they miss is excluded from hours worked, while time spent taking breaks is included in hours worked.  This is unfair to the employee and a windfall for the Employer, since the Employer receives 15 minutes of additional labor and does not count the time as hours worked.  The employee who takes her breaks and is asked to stay an extra 15 minutes receives daily overtime on those 15 minutes, but provides the same

amount of labor as the employee who misses a rest period and is paid straight time for the extra work.  No contract language supports the distinction between rest period time taken and rest period time missed.

The "pay for time not worked" sentence in Article 7.5.1 does not apply to rest periods.  The evident purpose of that language is to ensure that paid time off is not counted toward overtime.  That language predates the Employer's legal obligation to pay employees for missed breaks.  It is unlikely the parties contemplated that pay for missed rest periods would come under the scope of that language.  The opposite inference is warranted, since the parties had already agreed that rest period time taken is time worked.

When the Agreement is construed as a whole, the reason for the "pay for time not worked" sentence is evident.  Absent that sentence, it may be argued that paid time off such as PTO and EIB would be included in the overtime calculation, even though the employee is off work when those hours are paid.  Article 5.10 provides that paid time off is hours worked for purposes of benefit accruals, and Article 10.6 reiterates that PTO and EIB do not count toward overtime.  It makes sense to exclude those paid time off hours from overtime requirements to be consistent with wage and hour laws.  The Employer is not required to count paid time off as hours worked, or to count it in calculating the regular rate of pay for overtime purposes.  The Employer likely wanted this sentence to ensure it was not contractually obligated to pay overtime on paid time off.

It is not reasonable to lump missed rest period time with paid time off.  In Wingert, the Court recognized that missed rest breaks give an employer 15 minutes of extra labor, which extends the work day by the amount of the missed break.  Employees are entitled to daily overtime for the time worked beyond their normal work day just as they would be if the Employer required them to stay an extra 15 minutes.

Arbitrator Levak's decisions cited by the Employer do not support its case.  One involved different issues, and Arbitrator Levak determined the contract language, lengthy past practice, and bargaining history all supported the employer's position.  The other decision does not contain a reasoned analysis of the "pay for time not worked" language at issue here.

The language of the Agreement does not support the Employer's position; it supports the Union's position because it recognizes that rest period time is time worked.  There is no binding past practice supporting

the Employer's position; the past practice is for the Employer to record rest period time taken as hours worked. No industry practice supports the Employer's position; only one other hospital the Employer can point to does not record missed rest period time as hours worked.

Arbitrator Levak's decision in the St. Joseph's Hospital case should not be followed. He did not provide a reasoned analysis of the disputed contract language. He gave no explanation for his primary conclusion that "A missed rest break clearly is time paid for but not worked." He pointed to no contractual language supporting that conclusion. He did not explain why he concluded that rest period time taken was hours worked, but missed rest period time was pay for time not worked. He did not explain why he gave no weight to State Law in considering what is included or excluded from "hours worked." He ignored the Washington Supreme Court's reasoning, and did not explain why he gave little or no weight to external law when the parties explicitly stated the rest period provision was to be administered according to State Law. He did not explain why he would rely on bargaining history and practice evidence that pre-dated an employer's obligation to pay additional compensation for missed rest period time.

REMEDY

The appropriate remedy is to direct the Employer to make affected employees whole for loss of overtime wages. Arbitrators have broad discretion to fashion an appropriate remedy. They may award monetary damages to place the parties in the position they would have been in had there been no violation. Make whole awards may include recovery of lost overtime, and interest may be awarded.

Here, a make whole remedy is appropriate to address the wage loss to employees who worked 8 or more minutes beyond their work day (including reported missed rest period time) but who did not receive the daily overtime rate. The amount owed can be established from the Employer's payroll records or reports of the kind offered in evidence by the Employer. The records will show the total hours worked on days when missed rest periods were reported, along with the rate of pay applied to that time. To fully compensate employees, interest should be awarded on the amounts owing.

## POSITION OF THE EMPLOYER

TIMELINESS

The Agreement is clear.  Grievances must be submitted within thirty days "from when a nurse, nurses or the Union is aware or should have been aware that a grievance exists."  The Employer paid nurses according to its current practice for almost a year and a half prior to the filing of the grievance.  Nurses paid in this manner included stewards and other Union leaders.  The grievance is untimely by over a year.

For many years, the Employer paid all missed breaks at the straight time rate.  The Union never challenged that practice, and it is too late to do so now.  Even if the Union believed that Sacred Heart changed the legal landscape for payment of missed breaks at contractual overtime rates, it waited more than a year and a half after forming this mistaken belief before it filed this grievance.  The grievance is therefore untimely under the explicit terms of the Agreement.

The parties stipulated that the Employer paid for missed breaks under its current practice since October 1, 2013.  The Agreement requires that a grievance must be filed within 30 days after a nurse, nurses, or the Union "should have been aware" of the facts giving rise to the grievance.  On its face, the grievance is time-barred.  This is indisputably so because the Union first raised the Employer's purported failure to comply with the Union's construction of Sacred Heart in August 2013.  No grievance was filed within 30 days.

The Union "should have been aware" of the Employer's current practice since shortly after its implementation in October 2013.  It was almost immediately on notice that the Employer was not paying daily overtime for missed breaks.  At hearing, the Employer produced a chart of every bargaining unit employee who reported missing a break in four separate weeks between October 2013 and February 2015.  Those weeks were selected because they contained enough missed breaks to demonstrate that missed breaks were consistently calculated and paid.  In every case, employees who missed a break but did not work 40 hours in the week were paid at straight time for the break.  Nurses were never paid overtime for missed breaks unless they worked 40 or more hours in the week.  This included six stewards, Nurse Conference Committee members, or negotiating

committee members, including Nord.  As early as October 2013, Union representatives knew or should have known that they were not paid overtime for their missed breaks.  This knowledge is imputed to the Union.

Despite being on notice as early as October 2013, the Union waited until April 2015 to file this grievance.  Grievances must be filed within 30 calendar days "from when a nurse, nurses, or the Union is aware or should have been aware that a grievance exists."  A 20-month delay is inexcusable.  The grievance is grossly untimely.  The Employer's first step grievance response raised timeliness as a defense.

Article 15.1 bars the "continuing violation" theory.  A grievance must be submitted within 30 days of the date on which the Union should have been aware that the grievance exists.  The Union should have been aware of the Employer's practice within some reasonable period after October 1, 2013.  This Agreement does not allow the Union to indefinitely postpone its obligation to submit a grievance just from continued application of a decision made long ago.

The lack of formal notice to the Union of the practice does not excuse the delay.  The Employer did not notify the Union that it would only pay overtime when statutorily required, and it also did not notify the Union that it would pay daily overtime for missed breaks.  Arbitrators have rejected arguments that employees, including Union representatives and leaders, could not be expected to read their paychecks.

THE MERITS

There is no merit to the grievance.  The Agreement states that meal and rest periods "shall" be administered as provided by state law.  Under RCW 49.46.130(1), overtime is triggered only when an employee works more than 40 hours in a week.  Sacred Heart confirmed that an employer is obligated to pay overtime only when an employee's missed rest break extends their workweek beyond 40 hours.  The Union challenges the policy and practice of paying employees who work fewer than 40 hours in a workweek at their straight time rate for a missed break.  The Union has the burden of establishing by a preponderance of the evidence that the Employer's conduct contravenes a specific contractual provision.

The Arbitrator is limited to construing the meaning of the Agreement.  The Agreement provides that the Arbitrator "shall have no authority to add to, subtract from, or otherwise change or modify" its provisions.

21

The Agreement specifically addresses payment for overtime and rest periods.  The Arbitrator may declare those provisions "clear and unambiguous."  The Agreement does not require reference to bargaining history, past practice, or other rules of construction to interpret the parties' intent and agreement.  The parties agreed to administer meal and rest periods consistent with state law.  State law is clear.  Under RCW 49.46.130(1), an employee is entitled to overtime compensation for a missed rest break only when the employee works more than 40 hours in a workweek.  No similar state law requires overtime for an employee who works less than 40 hours in a workweek.

A careful review of Sacred Heart renders undeniable that an employee is entitled to overtime for missed rest breaks only when the employee works more than 40 hours in a workweek.  The Union's claim that all rest breaks must be paid at overtime rates can only arise from the Agreement standing alone, not on state law.  The question in Sacred Heart was whether overtime was due for the first 10 minutes of each missed break under state law, not under the collective bargaining agreement.  Sacred Heart paid straight time for a missed 15-minute break, but did not count any of that time as "hours worked."  The Court found this violated WAC 296-126-092(4) because that regulation entitled employees to a 10-minute rest break "on the employer's time."  The additional hours resulted in overtime liability only because they extended the work week beyond 40 hours.  Employees were entitled to overtime for 10 minutes of their missed break.  The Court did not hold that they were entitled to overtime for the entire 15-minute break creating overtime.  The contractual right to a 15-minute break did not give rise to a claim for 15 minutes of overtime.  The Court explicitly held that nurses were entitled to overtime for the first 10 minutes of each missed rest break.

The claim for overtime pay for each 15-minute missed rest break, regardless of whether the employee exceeds 40 hours in the workweek, can only arise from the Agreement, Article 7.5.1.  However, two portions of Article 7.5.1 bar such a claim.

Daily overtime applies only to "time worked beyond the normal full-time workday."  An employee does not work "beyond the normal full-time workday" simply by missing a rest break.  Such an employee is entitled to an additional 15 minutes' compensation, but still leaves work at the same time and does not work

a moment "beyond the normal full-time workday." Under the plain language of the Agreement, the employee is not entitled to time and a half for that missed rest break.

The principles enunciated in Wingert do not dictate a different result. Sacred Heart teaches that rights under a collective bargaining agreement and rights under WAC 296-126-092 are different. In construing WAC 296-126-092 in Wingert, the Court found that employees who miss a rest break "are, in effect, providing Yellow Freight with an additional 10 minutes of labor." That may be the correct interpretation of WAC 296-126-092, but Section 7.5.1's daily overtime obligation has no application to "time in effect worked beyond the normal full-time work day." The italicized words are not in the Agreement, and the Arbitrator is barred from inserting them. Section 7.5.1 cannot apply to time that was not actually worked beyond the normal work day.

Additionally, Section 7.5.1 provides that time paid for but not worked shall not count as time worked for purposes of computing overtime pay. A missed rest break is "time paid for but not worked." Under the plain language of the Agreement, it cannot be counted toward overtime. Under the Employer's timekeeping policies, "hours worked" includes only the time that a nurse is required "to be physically present in the work area." There is no evidence that nurses are required to remain on the premises for any period of time beyond their normal shift by virtue of missing a break; LaMarche testified that is not the case.

The Agreement defines a normal workday as "eight (8) hours' work to be completed within eight and one-half (8-1/2) consecutive hours." The Agreement expressly requires that rest breaks "shall be administered in accordance with State Law." State law expressly requires that rest breaks that are actually received be considered hours worked. To comply with state law, the Employer treats a rest break actually received as hours worked, but a missed rest break is plainly time paid for but not worked and may not count for purposes of overtime under the Agreement. Treating a missed rest break as not being "hours worked" is the only way to come to the holding of Sacred Heart. If a missed 15-minute rest break was treated as hours worked, the entire 15 minutes would be hours worked, and all of it should be at overtime rates if it causes the employee to exceed 40 hours in the week. The Court did not so hold; it held instead that overtime applied only to the missed 10 minutes required by WAC 296-126-092. Sacred Heart did not treat the contractually required missed rest

23

break as hours worked.  Pay for a missed rest break is pay for time not worked, and may not be counted toward overtime.

Sacred Heart concluded that rights arising from WAC 296-126-092 and rights arising from a collective bargaining agreement that go beyond the requirements of that regulation are different rights.  This conclusion establishes that Section 7.5.1 may not be read as requiring daily overtime for a missed rest break.  WAC 296-126-092 contains no provision that limits its application to time worked "beyond the normal workday;" the Agreement does.  WAC 296-126-092 contains no provision mandating that time paid for but not worked may not count towards overtime; the Agreement does.  The Arbitrator must apply the plain language of the Agreement, not extend Section 7.5.1 beyond its intended application.

Past practice and bargaining history demonstrate that employees who work fewer than 40 hours in a workweek are entitled only to straight time for a missed rest break.  Since before 2011, the Employer's meal and rest period policies and practices required that employees accurately document a missed break and that the Employer pay employees for recorded missed rest breaks at their straight time pay rate.[7]  The Union presented no evidence that this was not the longstanding policy and practice.  The transcript reflects a shared understanding that missed breaks had long resulted in additional compensation.  The Union merely questioned whether this additional compensation should be paid at straight time or overtime after Sacred Heart.  The parties first engaged in those discussions on August 20, 2013.  If the Union was going to contend that daily overtime applied to missed rest breaks, the time to present that claim was many years ago when the Employer began to compensate missed rest breaks in a manner inconsistent with the theory the Union advances.  For at least a decade, neither the Union nor the Employer interpreted Section 7.5.1 as requiring daily overtime for missed breaks.

---

[7]     The Employer's brief cites LaMarche's testimony and "Union Ex. 4" for this assertion.  The Union introduced only one exhibit, the Employer's 2011 Kronos Timekeeping Standards policy.  That policy requires employees to record missed meals and missed rest breaks; however, it does not address the rate of pay for missed rest breaks.  The cited testimony does not address when the Employer began paying for missed rest breaks at straight time; LaMarche was unsure what the policy was in 2008 when she began working for the Employer or at the time of the August 20, 2013, meeting.

During the period when the Employer was paying only straight time for missed breaks, the parties nego-
tiated two Agreements, both with provisions substantially identical to Sections 7.5.1 and 7.6 of the current
Agreement.  Even after conferring on Sacred Heart, the parties negotiated the current Agreement, which main-
tains the same language.  The Union presented no evidence that it sought to eliminate or alter either section
during negotiations.  It presented no evidence that the Employer ever paid daily overtime for a missed rest
break.  The Union's failure to challenge innumerable applications of Sections 7.5.1 and 7.6 demonstrates that
the past practice of paying straight time for missed rest breaks was consistent with the Union's understanding
of the Employer's contractual obligation.

The Union has already received a disfavorable ruling on the same issue, involving the same employer
and same contract language.  In an arbitration between St. Joseph Medical Center and the Union, the Union
argued that missed rest period time should be counted as additional hours/time worked for purposes of com-
puting daily overtime.  This is the same issue.  The parties are the same.  The Union is the same union;
Franciscan Health System is the same employer, doing business under the names of several hospitals, including
St. Joseph and Harrison.  The overtime and rest break provisions are substantively identical.  Arbitrator Levak
held that Washington law, even after Sacred Heart, does not require counting missed rest periods as hours
worked in computing contractual daily overtime.  The Union may not hunt for a different result from a differ-
ent arbitrator.  Issue preclusion would prohibit this in court.  It should not be permitted here.

Unpublished arbitration decisions construing collective bargaining agreements involving the Providence
Health System do not support the Union's position.  The Union's arguments are contrary to the plain language
of the Agreement, state law, past practice, bargaining history, and on-point precedent.  The contracts in those
cases were very different from the Agreement, in that they merely provided that application of the meal and
rest period section "shall be consistent with state law" (and, in one case, added federal law).  Arbitrator Whalen
noted the language difference, particularly the absence of language requiring the meal/reset periods to be ad-
ministered in accordance with WAC 296-126-092.  Arbitrator Savage concluded that requiring consistency with
state law is not the same as requiring application of state law.  Here, the Agreement specifically mandates that

the Employer "shall" administer meal and rest periods as provided by state law.  The Union should not be allowed to obfuscate the Agreement or the parties' intent by referring to decisions that address contracts that are not analogous.

Two of the Providence cases were decided before Sacred Heart.  They do not address the Court's determination that rights under statute and rights under a collective bargaining agreement are different rights.  Conflating remedies in those decisions may be excused on that basis, but should not be followed.  The employer in Everett did not raise the "daily overtime" issue, and Arbitrator Bonney did not consider state law in anything other than a passing reference.  Given the employer's failure to address the issue, he should be forgiven for failing to address Sacred Heart, but he engaged in no analysis of Sacred Heart.

The Providence cases do not contain any serious analysis of the provision in 7.5.1 that "time paid for but not worked shall not count as time worked for the purposes of computing overtime pay."  Arbitrator Whalen did not consider whether daily overtime applied to missed rest breaks.  She did not consider the effect of this provision.  Arbitrator Savage did consider this provision, but her treatment is dismissive and confined to a one-sentence footnote.  A rest break taken is treated as hours worked because Washington law requires it: the rest break is to be on the employer's time.  Compensation for a missed rest break is "time paid for but not worked."  Arbitrator Savage may be forgiven for not analyzing the difference between contractually required overtime and those arising under state law, as her decision predated Sacred Heart, but that failure should not be repeated.  Reading this provision out of the Agreement, as Arbitrator Savage did, "subtracts from" the Agreement.  Arbitrator Bonney was not presented with arguments regarding daily overtime and did not quote all the relevant provisions; there is no reason to assume that the agreement in Everett included a provision similar to Section 7.5.1.

The Providence cases are limited to those parties' specific collective bargaining agreement.  They do not require the employer to pay employees for missed breaks at overtime rates without limitation.  The parties' agreement controls.

SCOPE OF REMEDY

No remedy is appropriate.  The Employer revised its meal and rest break policy to incorporate, if not exceed, the clarification of state law in Sacred Heart.  It pays straight time if an employee misses a rest break and does not exceed 40 hours in a work week, and at time and one half if an employee misses a rest break and works in excess of 40 hours in a week.  Employees have already received all due compensation.

OPINION

ARBITRABILITY

The burden of proof on arbitrability is on the party arguing a grievance is not arbitrable.  Procedural provisions are as enforceable as any other contract term.  However, the parties include grievance and arbitration procedures as a means of resolving disputes.  Doubts regarding such procedural defenses are to be resolved against forfeiture.  A grievance may be found to be arbitrable, yet ultimately fail on the merits.

A claim that employees have been under-compensated asserts a continuing violation which occurs anew each time allegedly improper compensation is paid.  Absent specific contract language requiring a contrary result, the failure to file a grievance or protest alleged improper compensation does not bar insistence upon compliance with the contractual requirements in the future; it does preclude a remedy for the period outside the timeframe for filing the grievance.

The Union was aware by August 2013 that Sacred Heart had refined earlier interpretations of state law regarding payment for breaks.  It inquired at the time how the Employer was paying for missed breaks, but got no definitive answer; LaMarche "wasn't quite sure" of the answer.  The record does not reflect whether, as asserted on brief, the Employer had been paying straight time for missed breaks "for many years," but it is clear that it was doing so before the August 2013 meeting.

Neither the Union nor individual nurses received direct notice of the change in the manner in which the Employer calculated payment for missed breaks after Sacred Heart.  The Employer has not shown that the calculations were so obvious that the Union or nurses knew or should have known that statutory overtime was being paid but daily overtime was not.  No paystubs are in evidence, nor does the record reflect whether they

showed detailed information on the types of premium pay received in a pay period.  Testimony from a current timekeeper regarding the process of coding time did not address whether that coding appears on paystubs.

The summary of Nord's hours and pay supports his testimony that he was unable to tell from his paystubs whether he was receiving daily overtime for missed breaks, and that he had to consult two timekeepers to find out.  He worked premium hours nearly every week, sometimes for all or substantial portions of the week.  In some weeks, he worked more than 40 hours, but was not paid at overtime rates for missed breaks.  The record does not reflect whether his missed breaks that were not paid at overtime rates occurred while he was already working at premium rates.  The limited payroll summary for other employees is equally opaque as to the application of overtime rates to missed breaks.  In multiple instances, employees worked more than 40 hours in a week but were not paid at overtime rates for missed breaks; in each of those instances, at least some of the hours worked that week were premium hours.  Hines filed this grievance less than a week after the Nurse Conference meeting where he received verbal confirmation of what Nord reported having learned from the second timekeeper.

After the August 2013 meeting, the Union knew that the parties differed in their interpretation of Sacred Heart's requirements.  No evidence exists that it was lulled into believing that the Employer had acceded to its interpretation.  It learned by 2014 that the Employer was paying overtime for some missed breaks, but did not investigate whether the payments were consistent with its interpretation.  By its inaction, the Union relinquished the right to grieve alleged non-compliance with the Agreement that occurred outside the contractual 30-day deadline to file a grievance.  However, each pay period in which employees were compensated in a manner inconsistent with the Union's interpretation of the contractual obligation raised a new dispute regarding whether the Employer was in compliance with the Agreement.  The grievance therefore was timely as to any paychecks issued within 30 days before the filing of this grievance, i.e., on or after March 15, 2015.

THE MERITS

The Union bears the burden of persuasion in this contract interpretation case.  The applicable standards for contract interpretation are well established.  Where the language is clear and unambiguous,

arbitrators must give effect to the parties' intent.  That is so even where one party finds the result unexpected or harsh.  Language may be deemed clear even though the parties disagree concerning its meaning.  Arbitrators cannot interpret disputed contract provisions in a vacuum, but must read them in conjunction with the rest of the Agreement.  In determining whether the language is clear, words are given their ordinary and popularly accepted meaning, absent evidence they were used in a different sense.  Terms that have a specialized meaning, either in the industry or as used by the parties, will be given that meaning.  The party asserting a specialized meaning bears the burden of demonstrating it.

The Agreement requires meal and rest periods to be administered "in accordance with State Law (WAC 296-126-092)."  Parties negotiate such language to harmonize their contracts with subsequent legal changes or interpretations without the need for further negotiations or contract modifications.  If the law changes or is interpreted in a manner inconsistent with prior administration of the contract, the administration of the contract must change accordingly.  Consistent with this intent, at some point before Sacred Heart, the Employer began paying for missed rest breaks, without a change in contract language.  After Sacred Heart, the Employer began counting missed rest breaks as "time worked" for purposes of statutory overtime, again without any change in contract language.  Interpretation of WAC 296-126-092 is required in order to determine whether the Employer has administered the rest break provisions "in accordance with State Law."

In the years since the parties negotiated the break and overtime provisions, Washington's Supreme Court gradually fleshed out the meaning of the statutory term "hours worked" in the context of rest breaks.  Wingert's "in effect" articulation of the economic benefit to an employer from having an employee work through a break partially explained its ultimate conclusion that a missed rest break is "hours worked;" it primarily rested, however, on the overriding governmental interest in protecting employee health and safety by providing for periodic rest breaks as part of the employee's work day, and hence "on the employer's time."

Sacred Heart interpreted "hours worked" for purposes of statutory overtime.  The plaintiff in that case sought only statutory overtime for missed rest breaks that extended the work week past 40 hours.  The Court held only that employees were entitled to overtime for "hours worked" (including missed breaks) that exceeded

40 hours in a week.  The question raised here – whether missed rest breaks also constituted "hours worked" in other situations – was not presented to the Court, and it did not address that question.

Although the Court's later decision in Sakuma Bros. Farms arose under regulations applicable only to agricultural employees, its articulation of its reasoning sheds further light on its holdings in Wingert and Sacred Heart.  As in those cases, the Court declined to parse hours worked "on the employer's time" between hours spent on rest breaks and hours spent actively working.  The Court again stressed the fundamental health and safety concern underlying the requirement for breaks "on the employer's time."  The current interpretation of WAC 296-126-092 is thus that missed rest breaks are "hours worked."

The Agreement provides no basis for interpreting the term used in some Articles,[8] "time worked," to mean something different from the statutory language, "hours worked."  It requires rest break provisions to be administered "in accordance with State Law."  While the record does not reflect whether the pertinent language was negotiated before or after Wingert, at a minimum the various iterations of overtime language for various shift lengths were negotiated before the Court found in Sacred Heart that a missed break constituted "hours worked" under state law and in Sakuma Bros. Farms that one cannot parse between "hours worked" on a rest break and "hours worked" actively laboring.[9]  In view of the Court's subsequent clarifications of the law, I

---

[8]    Article 7.5.1 speaks of "time worked beyond the normal full-time work day or normal full-time work period."  Addendum A, which regulates 12-hour shifts, speaks of "time worked beyond or prior to the normal work day [twelve (12) hours] or beyond or prior to the normal work period [forty (40) hours within a seven (7) day period]."  Addendum B, which regulates 10-hour shifts, speaks of "hours actually worked in excess often [sic] (10) hours in one (1) day and/or in excess of forty (40) hours in a seven (7) day period."  Addendum C, which regulates 16-hour shifts, speaks of "hours actually worked in excess of sixteen (16) hours in one (1) day and/or in excess of forty (40) hours in a seven (7) day period."  Other than the typographic error in Addendum B, the language has remained unchanged since the 2008-2011 Agreement, the earliest in evidence.

[9]    Nord's 12-hour shifts offer an illustration of the Court's concern in these cases.  If Nord worked three shifts, his work week would consist of 36 hours, including nine paid breaks (three for each shift) totaling 2.25 hours.  Using the week of March 15-21, 2015, as an example, Nord worked 39.75 hours, of which 2.5 hours were paid at premium rates; he missed 1.25 hours in breaks that were not paid at overtime.  If he had taken his breaks but worked past the end of his shifts for those 1.25 hours, he would have been paid at overtime rates for the extra 1.25 hours of work provided.  This scenario resembles the concern addressed by the Court in Sacred Heart, and again articulated by the Court in Sakuma Bros. Farms, that employers would have an economic incentive to encourage employees to skip breaks, to the detriment of their health and safety.

conclude that, under State Law, a missed rest break constitutes "time worked" or "hours actually worked" "beyond" or "in excess of" the scheduled break.

The provision in Article 7.5.1, that "Time paid for but not worked shall not count as time worked for purposes of computing overtime pay," does not change this conclusion. Even without reference to the Court's later clarifications, Article 10 clarifies the meaning of "time paid for but not worked." It specifically excludes PTO and EIB hours from "hours worked in determining eligibility for overtime." It does not similarly exclude paid breaks or missed breaks. In any event, the Court's decisions interpreting "hours worked" to include missed breaks preclude applying Article 7.5.1 in the manner urged by the Employer.

Finally, I have considered the unpublished arbitration awards submitted by the parties. All involved different parties, albeit some were related, and contract language which to – to the extent it is quoted in those decisions – resembles (but is not identical to) the language at hand. Most were decided before the Court clarified the statutory language. They do not fully address the current legal interpretation of WAC 296-126-092, which govern here.

For all the above reasons, I conclude that the grievance shall be sustained. As I have concluded that the grievance is timely as to paychecks issued on or after March 15, 2015 (30 days before the grievance was filed), any remedy must be limited to those paychecks.

As a remedy, the Employer shall make employees whole by paying overtime rates for missed rest breaks where the work time for the day was not reduced accordingly, for any pay periods for which paychecks were issued on or after March 15, 2015. Pursuant to Article 7.4, there shall be no pyramiding of premium pay.

Except in very unusual cases, most labor arbitrators historically have not awarded interest routinely as part of a make-whole remedy. This practice may have been based on the former policy of the National Labor Relations Board, which has long since been abandoned in favor of awarding interest on back pay. Unlike parties to cases before the NLRB, parties to collective bargaining agreements have at all times had the power to provide by contract for the payment of interest on back pay. Arbitral reluctance to award interest has been so wide-spread and so long-standing that the parties must be presumed to have been aware of it. I therefore

31

have not joined the recent minority of arbitrators who routinely award interest absent contractual language providing for it.  In my view, interest on back pay is unwarranted except where the parties have agreed to it or in egregious cases – e.g., where it is abundantly clear that an employer knew its position had no merit but persisted in it in bad faith.

The Agreement does not provide for the payment of interest on monetary awards.  The Employer was mistaken in its view of the contractual requirements, but the evidence does not establish that this mistake rose to the level of bad faith.  Accordingly, no interest is awarded on the make whole remedy.

## AWARD

1.      The grievance is timely as to any paychecks issued on or after March 15, 2015.

2.      The grievance shall be sustained.

3.      As a remedy, the Employer shall make employees whole by paying overtime rates for missed rest breaks where the work time for the day was not reduced accordingly, for any pay periods for which paychecks were issued on or after March 15, 2015. Pursuant to Article 7.4, there shall be no pyramiding of premium pay.

4.      This matter is remanded to the parties for calculation and implementation of the Remedy.

5.      As agreed by the parties, I will retain jurisdiction over the Remedy portion of this Award and any disputes arising therefrom for a period of 30 days.

LUELLA E. NELSON - Arbitrator